1  Michael C. Ormsby
   United States Attorney
2  Eastern District of Washington
   Aine Ahmed
3  Assistant United States Attorney
   Post Office Box 1494
4  Spokane, WA 99210-1494
   Telephone:  (509) 353-2767
5

6               UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF WASHINGTON
7

8  UNITED STATES OF AMERICA,          )
                                      )
9              Plaintiff,             )
                                      )   07-CR-120-EFS
10      vs.                           )
                                      )   United States' Motion to
11 JOSEPH PATRICK CURRY,              )   Admit Evidence Pursuant to
                                      )   Fed. R. Evid. 404(b)
12             Defendant.             )
                                      )
13

14        Plaintiff, United States of America, by and through Michael C. Ormsby,

15 United States Attorney for the Eastern District of Washington, and Aine Ahmed,

16 Assistant United States Attorney for the Eastern District of Washington,

17 respectfully submits the following motion to admit evidence of prior bad acts,

18 pursuant to Fed.R.Evid. 404(b).

19                              **Background**

20        On August 10, 2007, Joseph Patrick Curry, a Canadian citizen, allegedly

21 flew a red and white Cessna 172 airplane, bearing tail number C-FKHR, from

22 Canada into the United States.  Curry landed the plane in the Eastern District of

23 Washington, and then fled.  Based on witness statements, it is believed that Curry

24 had to make an emergency landing due to mechanical problems with the plane.

25 United States law enforcement personnel later recovered over 28 kilograms of

26

27 United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 1
   P10118DD.AAB.wpd

pure 3,4-methylenedioxymethamphetamine (also known as MDMA or Ecstasy) in three duffel bags approximately one hundred yards from the plane.  A farmer, who happened to be in a nearby field, saw a male figure walk from a nearby tree line to the plane and then back to the tree line, located near where the MDMA was found. Curry was arrested on August 13, 2007, after re-entering the United States via the Blaine, Washington, Port of Entry, to retrieve his plane.  Curry stated at the time of his arrest that he was in fact the pilot of the aircraft; however, he stated that he knew nothing about the narcotics found a short distance from the plane.        .

Mike XXXX, a Canadian citizen, will testify that he sold a red and white 1958 Cessna 172, bearing tail number C-FKHR, to Joe Curry on August 9, 2007. Mr. XXXX will testify that he received $8,000.00 in cash for a down payment and received a $21,000.00 wire transfer from Curry for a total sale price of $29,000.00 in Canadian currency.  Mr. XXXX will testify that he received a telephone call from Curry on August 10, 2007, asking him about problems he was having with starting the aircraft.  Mr. XXXXX can positively identify Curry due to the fact that he sold him the aircraft in a face to face transaction.

Stan YYYY, a Canadian citizen, will testify that he accompanied Joe Curry on a test flight aboard the Cessna 172 on August 8, 2007.  Mr. YYYY will testify that Curry was uncomfortable with landing the aircraft, as he was unfamiliar with manual flaps.  Mr. YYYY will testify that Curry paid $800.00 in cash to the radio equipment shop for equipment to be installed in the following week after he paid Mr. XXXX $8000.00 in cash towards the purchase of the Cessna 172 CF-KHR..

Simon ZZZZ, a Canadian citizen, will testify that he received $800.00 in cash from Curry to install electronics into the aircraft that Curry had just purchased.

United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 2
P10118DD.AAB.wpd

1    Roger BBBB, a Canadian citizen, will testify that a man matching Curry's

2    physical description arrived at the Penticton, British Columbia (BC), airport on

3    August 10, 2007, before 6 am, loaded three large leather bags, described as

4    "heavy" pilot's bags, into the Cessna 172 that Mr. Purton described as a red and

5    white, pre-1960s 172 that had been for sale and previously owned by Mike

6    XXXX, conducted a pre flight check and then taxied to the runway.  Mr. BBBB

7    will testify that he heard and saw the pilot stall the aircraft on the runway, swear

8    loudly for a short time, re-start the engine and take off.

9    Merrilyn CCCC, a Canadian citizen, will testify that she observed two male

10    subjects, one later identified from a photo line-up as Joseph Curry, land at the

11    Princeton, BC, airport on August 10, 2007, at approximately 7:20 am.  Mrs. CCCC

12    will testify that after Curry used the telephone, he returned to his plane and was

13    met by an unknown male, who, she believes, flew away with Curry at

14    approximately 8:30 a.m.  Mrs. CCCC will also testify that Curry returned to the

15    Princeton, BC airport on August 11, 2007, and stated that he (Curry) had crashed

16    his plane in the United States and was concerned about getting his plane back.

17    Mrs. CCCC will testify that Curry stated that he did not file a flight plan for

18    August 10, 2007.

19    Customs and Border Protection (CBP) Aviation Interdiction Agents (AIA)

20    Shawler, Rosen and Hausner will testify that they were operating a CBP

21    surveillance aircraft on a routine patrol near Conconully, Washington.  AIA

22    Shawler, Rosen and Hausner will testify that they followed a red and white Cessna

23    flying southbound from near the US/Canada border and, when intercepted near

24    Winthrop, Washington, the Cessna flew east and eventually landed in a field

25    outside Conconully.  They will testify although they were unable to see the tail

26

27    United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 3
     P10118DD.AAB.wpd

1 number of the aircraft, they did see the pilot get out of the aircraft, go into the tree

2 line, return to the aircraft and walk toward a home located approximately 300

3 yards away.

4       Harlan DDDD is a homeowner and the individual who called 911 in order to

5 report the airplane that landed in a field within 300 yards of his home near

6 Conconully, Washington.  Mr. DDDD will testify that he immediately recognized

7 this aircraft as a Cessna 172 and that it was registered in Canada due to the

8 Canadian tail number.  Mr. DDDD will testify that he made his way to his home

9 from working on an irrigation line located along his driveway below his residence,

10 and from his bedroom, he could see a man coming from the tree line, go to the

11 plane, open the door, maneuver items in the back of the aircraft and then return to

12 the tree line.  Mr. DDDD is also an accomplished pilot and owns a Cessna 172,

13 similar to the plane that landed near his home, and will testify to the area and

14 region that the plane was flying in.

15       Okanagan County Sheriff's Deputy Harrison will testify that he originally

16 received the call from dispatch regarding the aircraft near Conconully,

17 Washington.  Deputy Harrison will testify that he arrived at the residence of the

18 reporting party, Harlan DDDD, interviewed Mr. DDDD, and then proceeded to the

19 Cessna 172 bearing tail number C-FKHR, where he and Senior Border Patrol

20 Agent (SBPA) Clark followed footprints down the hill away from the plane.

21 Deputy Harrison will also testify that he processed the evidence, including taking

22 photographs, fingerprinting the plane and its contents and collecting evidence

23 from inside the aircraft.  No prints were recovered.   Deputy Harrison will also

24 testify to taking photographs of the aircraft, the condition of the controls inside the

25

26

27

United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 4

P10118DD.AAB.wpd

1   aircraft and evidence taken from the aircraft that was turned over to North Central

2   Washington Narcotics Task Force Detective Steven Brown.

3          SBPA Hefker will testify that he arrived at the landing site near Conconully,

4   Washington, after other law enforcement personnel had arrived.  Utilizing his

5   training and experience, SBPA Hefker was the first to follow the footprints from

6   the Cessna 172, to the fence line and down into a wooded area approximately 50

7   to 100 yards south east from the plane and discover three duffel bags which

8   contained approximately 30 kilograms of a substance that initially tested positive

9   for the presence of methamphetamine, later determined to be MDMA.

10         ICE SA Munn will testify that he arrived at the airplane-landing site on

11  August 10, 2007, and searched the area for the pilot, who had fled the area.  SA

12  Munn will also testify that he saw some duffle bags under the brush in a wooded

13  area approximately 50 to 100 yards south east from the and was present when

14  Okanagan County Sheriff's Deputy Kevin Arnold utilized a field test kit on the

15  contents of the bags, which provided a positive result for the presence of

16  methamphetamine, later determined to be MDMA.

17         SBPA Clark will testify that he arrived at the landing site with Deputy

18  Harrison and spoke with the reporting party, Harlan DDDD.  SBPA Clark was

19  present when footprints were discovered leading away from the airplane entered

20  the tree line in a northeasterly direction and he followed the foot sign down to the

21  main road.  SBPA Clark will also testify that he was called over to the area where

22  the narcotics were discovered by SBPA Hefker.  SBPA Clark assisted in carrying

23  the bags to Deputy Arnold's patrol vehicle, assisted in processing the evidence,

24  and discovering the "for sale" sign in the plane.  SBPA Clark will testify that he

25  called the Canadian telephone number on the "for sale" sign and spoke with an

26

27  United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 5

1 individual who stated that the plane was recently sold to Joe Curry, a Canadian
2 citizen.

3       Okanagan County Sheriff's Deputy Kevin Arnold will testify that he arrived
4 at the landing site with SA Munn and used his drug-detecting canine (dog) to track
5 the scent trail left behind by the pilot.  Deputy Arnold will testify that he assisted
6 in carrying the bags of narcotics from the area they were found to his service
7 vehicle and then tested the substance found in one of the bags.  The field test kit,
8 which is a presumptive test designed to identify the presence of Methamphetamine
9 and MDMA, tested positive for the presence of methamphetamine and MDMA.
10 Deputy Arnold assisted Deputy Harrison in processing the evidence found in the
11 aircraft.

12       North Central Washington Narcotics Task Force (NCWNTF) Detective
13 Steven Brown will testify that he searched the area of Conconully for the pilot of
14 the aircraft on August 10, 2007, and later that evening, took initial possession of
15 all the evidence collected, including the narcotics. Detective Brown will testify
16 that he placed all evidence and the narcotics into the evidence room at the
17 Okanogan County Sheriffs Office and on August 30, 2007, Detective Brown
18 remitted the evidence, including the narcotics, to ICE SA Saroff.

19       ICE SA Smith will testify that on August 30, 2007 he assisted in the seizure
20 and packaging of the narcotics for testing purposes and together with SA Saroff,
21 delivered the boxes of drug evidence to a CBP aircraft that flew the narcotics to
22 the U.S. Drug Enforcement Administration's (DEA) Western Regional Laboratory
23 in San Francisco, California on August 31, 2007.

24       DEA chemist Matt Rainsberg will testify as follows:

25

26

27 United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 6
P10118DD.AAB.wpd

1    (A) Rainsberg is a qualified chemist with the DEA's Western Regional

2  Laboratory in San Francisco, California, whose duties include responsibility for

3  analyzing substances seized by U.S. law enforcement to see whether they contain

4  controlled substances under U.S. law.  Based on his training and experience with

5  the DEA, he is familiar with substances, and their properties, that are

6  Amphetamines, including their salts, derivatives, isomers and analogues and salts

7  of derivatives, isomers and analogues.

8    (B) He will testify that the drug held out on the street as "Ecstasy" is a

9  colloquial reference to either a drug referred to as MDMA or another drug referred

10  to as MDA.  The MDMA acronym is derived from the chemical name 3,4-

11  Methylenedioxy-N-Methyl-amphetamine.  The chemical name 3,4-

12  Methylenedioxy-N-Methyl-amphetamine can also be written using different

13  recognized chemical naming conventions as:  3,4-

14  methylenedioxymethamphetamine or N-methyl-3,4-methylenedioxyamphetamine

15  or N,$\alpha$-dimethyl-1,3-benzodioxole-5-ethanamine.  These are four recognized ways

16  of naming the same drug.

17    (C)  The MDA acronym is derived from the chemical name 3,4-

18  methylenedioxyamphetamine.  The chemical name 3,4-

19  methylenedioxyamphetamine can also be written using a different recognized

20  chemical naming convention as $\alpha$-methyl-1,3-benzodioxole-5-ethanamine.  These

21  are two recognized ways of naming the same drug.

22    (D) MDMA and MDA are both synthetic drugs. MDMA and MDA

23  appearing on the street in tablet form are manufactured from a salt form of either

24  drug.  The salt form of either drug is usually a hydrochloride salt (HCl).

25

26

27  United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 7

P10118DD.AAB.wpd

1    (E) Rainsberg will testify that he analyzed the substance seized by ICE SA

2    Saroff on August 30, 2007.  The substance seized contained a detectable amount of

3    the controlled substance 3,4-methylenedioxymethamphetamine hydrochloride.  He

4    found that the exhibits were in fact, 96% pure MDMA, and had a net weight of 29.89

5    kilograms.  He would testify that there was enough MDMA to manufacture over

6    600,000 ecstasy pills

7    On August 13, 2007, SA Saroff was notified ICE SA Jessie Miller that Curry

8    was attempting to enter the United States through the Sumas, Washington, Port of

9    Entry.  SA Saroff notified ICE SA Jessie Miller that probable cause existed for the

10    arrest of Curry and instructed SA Miller to take Curry into custody.

11    ICE SA Jessie Miller will testify that he arrived at the Blaine, Washington, Port

12    of Entry on August 13, 2007, and arrested Curry based on probable cause that Curry

13    had piloted the plane on August 10, 2007 which contained approximately 29

14    kilograms of MDMA.  SA Miller will testify that he took a statement from Curry

15    where Curry admitted to having been the pilot of the aircraft that landed near

16    Conconully, Washington.  According to SA Miller, Curry stated that he knew nothing

17    about the illicit narcotics found near the plane.

18    North Central Washington Narcotics Task Force (NCWNTF) Detective Steven

19    Brown will further testify that he returned a call to Curry's attorney, John Conroy, on

20    August 13, 2007 before Curry had attempted to enter the United States from Canada

21    through the Sumas, WA Port of Entry, and spoke to Conroy about Curry coming to

22    the United States to retrieve his aircraft.  Detective Brown will testify that he was

23    notified by Okanogan County dispatch that Conroy was inquiring as to the officer and

24    agency responsible for Curry's aircraft.  Conroy claimed that his client, Curry, had

25

26

27    United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 8
P10118DD.AAB.wpd

1   engine trouble, was forced to land near Conconully and wanted to retrieve his plane.

2   Conroy was not notified that the narcotics had been recovered.

3         After he had been arrested, the Defendant had a bail hearing in front of a U.S.

4   Magistrate in Seattle.  This Magistrate found the Defendant not to be a flight risk, and

5   released the Defendant on a $10,000 cash appearance bond, awaiting some decision

6   on the Defendant's immigration status.  The Magistrate informed the Defendant's

7   counsel to contact the Eastern District of Washington for his next appearance date as

8   it would not be set until after the Defendant was released.  After being released, the

9   Defendant failed to show for his court date, set for September 10, 2007, in the Eastern

10   District of Washington.  The Defendant was eventually extradited from Canada.

11   **Nature of 404(b) Evidence:**

12         SA Saroff and other law enforcement officers will testify that through several

13   on going investigations involving the importation of illegal narcotics from Canada

14   into the United States, Curry has been implicated as a co-conspirator.  Specifically,

15   Curry is believed to be the individual that loaded approximately 135 kilograms of

16   marijuana onto a helicopter on May 9, 2006.  The pilot and co-pilot of the helicopter

17   later flew into the United States and delivered the marijuana to Henry Patrick Roman

18   and James Burglund who were subsequently arrested and have pleaded guilty to

19   various federal drug charges.  Based on surveillance, Curry's vehicle was identified

20   by members of the Royal Canadian Mounted Police (RCMP) while it was in Canada

21   and meeting with the helicopter, during which several duffel bags were transported

22   from Curry's vehicle to the helicopter.  It was later confirmed that the duffel bags

23   contained marijuana. The United States will submit this evidence via a video taken

24   of Curry's vehicle meeting with the helicopter, as well the testimony of the pilot of

25

26

27   United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 9

P10118DD.AAB.wpd

the surveillance aircraft that made the recording and the officer who identified Curry's vehicle.

SA Saroff can also testify that Curry has been implicated as the individual that was responsible for arranging the marijuana load delivered via floatplane to Sharmila Kumar and Shailen Varma on Omak Lake on March 23, 2006. This information will be corroborated at trial through the testimony of a cooperating witness, who will testify that Curry set up the importation of the marijuana into the United States from Canada on this occasion. This witness worked with Curry to import marijuana into the United States and had specific discussions with Curry as to this transaction. Defense counsel has previously reviewed reports of interviews conducted with this witness.

This witness will also testify that Curry was responsible for the marijuana and ecstasy which was loaded onto a floatplane on the Fraser River north of Vancouver, British Columbia (BC) on March 14, 2006. The pilot was arrested after flying into the United States from Canada and attempting to unload the narcotics from the aircraft. The pilot was later convicted in the Eastern District of Washington. The witness will testify that Curry and spoken to him/her about this delivery, had set-up the delivery, and had purchased the plane used to make the delivery. This witness will also testify based only on his/her personal observations and interactions with the Defendant. This witness will also provide background information on the Organization Curry worked for, and will testify that the sole purpose of this organization was to import drugs into the United States from Canada. This witness will testify how pilots were paid, and how these pilots were recruited by the Organization. He/she will testify about Curry's role in the Organization, which this witness will testify was that of a high level planner.

United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 10

1

**<u>ARGUMENT</u>**

2      The United States intends to offer evidence of prior bad acts to prove intent and

3 motive pursuant to Fed.R.Evid. 404(b). Rule 404(b) in relevant part states that

4 evidence of other crimes, wrongs, or acts is not admissible:

5          to prove the character of a person in order to show action in
           conformity therewith. It may, however, be admissible for
6          other purposes, such as proof of motive, opportunity, intent,
           preparation, plan, knowledge, identity, or absence of mistake
7          or accident . . . .

8 Fed.R.Evid. 404(b).

9      Rule 404(b) "is a rule of inclusion," not exclusion. *United States v. Jackson*,

10 84 F.3d 1154, 1159 (9th Cir. 1996)(citing *United States v. Meling*, 47 F.3d 1546, 1557

11 (9th Cir. 1995) *cert. denied*, 516 U.S. 843 (1995). Therefore, if Rule 404(b) evidence

12 is probative on any issue except propensity, it is admissible. *Id.*; *United States v.*

13 *Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991).

14      The Ninth Circuit has set forth a four-part test for evaluating the admissibility

15 of 404(b) evidence: the "other acts" must 1) tend to prove a material point in issue;

16 (2) not be too remote in time; (3) be proven with evidence sufficient to show that the

17 act was committed; and (4) if admitted to prove intent, be similar to the offense

18 charged. *Ayers*, 924 F.2d at 1473. The burden is on the United States to prove that

19 the evidence meets all of these requirements. *United States v. Arambula-Ruiz*, 987

20 F.2d 599, 602 (9th Cir. 1993).

21      The evidence the United States intends to admit is  not too remote in time from

22 the charged offense. *See United States v. Rude*, 88, F.3d 1538, 1550 (9th Cir. 1996)

23 *also see United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989)(twelve years in time

24 not too remote so long as acts are similar the ones he is currently charged with). The

25 United States intends to offer clear and convincing evidence that the Defendant

26

27 United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 11
P10118DD.AAB.wpd

1   committed the prior acts based on the testimony of officers, who made visual

2   observations, and at least one cooperating witness who had personal knowledge of

3   the Defendant's activities, as specifically described above.  The issues of "intent" and

4   "motive" are probative and relevant to determining whether the Defendant was in the

5   business of importing controlled substances, and more specifically, whether the

6   Defendant possessed and intended to import the MDMA which was found near his

7   plane in 2007.  The prior bad acts sought to be admitted by the Defendant are also

8   similar to the charged offense.  Accordingly, if at trial, the United States lays a proper

9   foundation, the Defendant's prior activities of importing controlled substances into

10  the United States should be admissible.

11                              **CONCLUSION**

12          The United States moves that the above evidence be admitted pursuant to

13  Fed.R.Evid. 404(b) as evidence of intent and motive.

14                  DATED January 18, 2011.

15                                          Michael C. Ormsby
                                            United States Attorney
16

17                                          *s/Aine Ahmed*

18                                          Aine Ahmed
                                            Assistant United States Attorney
19

20

21

22

23

24

25

26

27  United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 12
    P10118DD.AAB.wpd

1         I hereby certify that on January 18, 2011, I electronically filed the foregoing

2    with the Clerk of the Court using the CM/ECF System which will send notification

3    of such filing to the following, and/or I hereby certify that I have mailed by United

4    States Postal Service the document to the following non-CM/ECF participant(s):

5

6             Mr. Christian J. Phelps
         Attorney at Law
7             1321 West Broadway Avenue
         Spokane, Washington 99201

8

9

                *s/Aine Ahmed*
10

11                    Aine Ahmed
                Assistant United States Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    United States' Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b) - 13